J-S75039-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| BRUCE DAVIS, | : | |
| | : | |
| Appellant | : | No. 881 EDA 2015 |

Appeal from the Judgment of Sentence April 25, 2013
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No(s):  CP-51-CR-0006746-2011

BEFORE:  BOWES, MOULTON and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED DECEMBER 29, 2016**

Bruce Davis ("Davis") appeals from the judgment of sentence imposed following his conviction of burglary, aggravated assault, simple assault, recklessly endangering another person ("REAP"), possession of an instrument of crime ("PIC"), terroristic threats and criminal contempt.[1]  We affirm.

In its Opinion, the trial court set forth the facts underlying the instant appeal, which we adopt as though fully restated herein.  *See* Trial Court Opinion, 12/11/15, at 1-3.

Briefly, following a bench trial, Davis was found guilty of the above-described charges, and sentenced to an aggregate 30-60 years in prison. Davis filed a post-sentence Motion, which the trial court denied.  Thereafter

---

[1] 18 Pa.C.S.A. §§ 3502, 2702, 2701, 2705, 907, 2706, 6114.

Davis filed the instant timely appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Davis presents the following claim for our review: "Did the [trial c]ourt err in failing to grant [Davis's] post-sentence [M]otion arguing that the conviction was against the weight of the evidence?" Brief for Appellant at 7. Davis argues that the recollection of the victim "overall was very poor and arguably selective." *Id.* at 11. Davis points out that the victim recalled "the alleged assault by [Davis], but had many lapses in memory." *Id.* In particular, Davis directs our attention to the victim's inability to recall when she first informed the District Attorney's office that her son had witnessed the incident. *Id.* Further, Davis states that the victim had trouble recalling the name of the district attorney with whom she spoke; her discussion with that attorney; her testimony at the preliminary hearing; and other details about the incident. *Id.* at 11-12. According to Davis, the victim has a bias and grudge against him. *Id.* at 12. Davis also asserts that the victim's "inability to reconcile her story that she presented at trial with the story that she [previously had] told [a police officer] is a critical inconsistency that impacts the [b]urglary charge significantly." *Id.* at 13. In particular, Davis challenges the victim's trial testimony that he forced his way into the victim's apartment. *Id.* Finally, Davis contends that he presented credible alibi witnesses. *Id.*

As our Supreme Court has explained,

> [t]he decision to grant or deny a motion for a new trial based upon a claim that the verdict is against the weight of the evidence is within the sound discretion of the trial court. ***Commonwealth v. Cousar***, 593 Pa. 204, 928 A.2d 1025, 1033, 1036 (Pa. 2007). Thus, "the function of an appellate court on appeal is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying question of the weight of the evidence." ***Commonwealth v. Rivera***, 603 Pa. 340, 983 A.2d 1211, 1225 (Pa. 2009). An appellate court may not overturn the trial court's decision unless the trial court "palpably abused its discretion in ruling on the weight claim." ***Commonwealth v. Champney***, 574 Pa. 435, 832 A.2d 403, 408 (Pa. 2003). Further, in reviewing a challenge to the weight of the evidence, a verdict will be overturned only if it is "so contrary to the evidence as to shock one's sense of justice." ***Commonwealth v. Diggs***, 597 Pa. 28, 949 A.2d 873, 879 (Pa. 2008).

***Commonwealth v. Cash***, 137 A.3d 1262, 1270 (Pa. 2016).

In its Opinion, the trial court set forth the relevant law, addressed Davis's claim, and concluded that it lacks merit. ***See*** Trial Court Opinion, 12/11/15, at 5; ***see also id.*** at 3-5 (discussing the sufficiency of the evidence and credibility determinations made by the trial court).

We discern no abuse of discretion by the trial court in its findings or conclusion. Accordingly, we affirm on the basis of the trial court's Opinion with regard to Davis's challenge to the weight of the evidence. ***See id.***

Judgment of sentence affirmed.

- 3 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/29/2016

Circulated 11/30/2016 12:48 PM

DEC 11 2015
Criminal Appeals Unit
First Judicial District of PA

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CP-51-CR-0006746-2011 |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRUCE DAVIS | : | |
| | : | |

## OPINION

Coleman, R.                                                                    December 10, 2015

### I. PROCEDURAL HISTORY

Following a waiver trial before the Honorable Robert P. Coleman, Appellant, Bruce Davis, was found guilty of burglary, aggravated assault, recklessly endangering another person, possession of an instrument of crime, and terroristic threats. Appellant was sentenced to 30-60 months incarceration, followed by seven years probation. Appellant, by and through his attorney, Gregory Pagano, filed a post sentence motion claiming that the verdict was contrary to the weight of the evidence and a post sentence motion claiming that trial counsel was ineffective for failing to file an appeal to Superior Court. Appellant's post sentence motion regarding the weight of the evidence was denied, and this appeal followed.

### II. ISSUES PRESENTED BY APPELLANT

In his 1925(b) statement, Appellant alleges verbatim that;

- The Lower Court erred in failing to grant the Defendant's post-sentence motion.

- The Verdict was against the weight of the evidence because the evidence contradicted the strong evidence presented by the defendants and there was inconsistent evidence on behalf of the Commonwealth.

### III. FACTS

At a waiver trial before this court, the Commonwealth presented testimony from Shirena Cunningham, Bruce Cunningham, Philadelphia Police Detective Charles King, and Philadelphia Police Officer Stephanie Coleman. The defense presented testimony from Jacqueline Hall-Livingston and Angela Hall.

1

On September 3, 2010, complainant, Shirena Cunningham, was home with her son at 7430 Medrick Street in the City and County of Philadelphia. (Notes of Testimony from 1/31/13 (hereinafter N.T.) at 16) At approximately 9:00 p.m., Ms. Cunningham took her trash out to the street and heard Appellant, Bruce Davis, call her name and begin to approach her aggressively. (N.T. at 19) Appellant is Ms. Cunningham's ex-boyfriend and the father of her 11 year old son (N.T. at 15) Ms. Cunningham attempted to go back inside her house, but Appellant forced his way through the door and began attacking her in the entryway. (N.T. at 20) Appellant had a butcher knife in one hand and was pushing Ms. Cunningham onto the stairs with his other hand (N.T. at 21) Appellant punched Ms. Cunningham and she hit him back. Appellant told Ms. Cunningham that if she hit him again he would kill her and he continued to punch her (N.T. at 23) Appellant choked Ms. Cunningham to the point where she was unable to breath. (N.T. at 24) He then held the butcher knife up to her neck. (N.T. at 25) Ms. Cunningham held up her hands to protect herself and received a cut from the knife on her hand. Appellant continued to hit Ms. Cunningham and threatened to kill her. (N.T. at 26) Eventually, Appellant stopped attacking Ms. Cunningham and left the house. (N.T. at 27) Ms. Cunningham and Appellant had a violent past and she had a protection from abuse order in place at the time of this incident. (N.T at 34)

As a result of her attack, Ms. Cunningham suffered cuts on her hand and neck, bleeding from her mouth and nose, and a bump on her head. Ms. Cunningham called the police and Officer Stephanie Coleman responded to the scene. (N.T. at 28) Officer Coleman testified that at the scene, Ms. Cunningham stated that Appellant had knocked on the door and attacked her (Notes of Testimony from 2/1/13 (hereinafter N.T.2) at 29) Officer Coleman also observed cuts to Ms. Cunningham's neck and wrist (N.T.2 at 27) Ms. Cunningham was later transported to the police station by her boyfriend, Philadelphia Police Officer Alvin Outlaw. (N.T. at 29) Ms.

2

Cunningham gave a statement to Detective Charles King (N.T.2 at 8) Detective King testified that Ms. Cunningham was nervous and shaken up and that she had some scratches on her (N.T.2 at 6-7) The statement given to Detective King was substantially similar to her testimony at trial. (N.T.2 at 6)

Appellant and Ms. Cunningham's son, Bruce, who has special needs, testified that he was in his room on the night in question and heard banging. He exited his room and saw Appellant holding his mother down by her neck. (N.T. at 120) Bruce also saw that Appellant was holding a knife in one hand. Bruce went to hide in his room and heard Appellant say, "I love you, but I'm going to kill you." (N.T. at 121)

The defense called alibi witnesses Jacqueline Hall-Livingston, and her sister, Angela Hall. (N.T. at 136 and 158) Both women testified that they had hired Appellant to videotape their mother's 70th birthday party in August of 2010. (N.T. at 136 and 159) They further testified that they went to Appellant's home on the night of September 3, 2010 to work on editing the video. (N.T. at 139 and 160) Both women testified that they went to Appellant's apartment around 8:00 p.m. (N.T. at 139 and 162) Ms. Hall-Livingston testified that the women left Appellant's apartment around midnight (N.T. at 141)

## IV. LEGAL ANALYSIS

- **The Verdict was against the weight of the evidence because the evidence contradicted the strong evidence presented by the defendants and there was inconsistent evidence on behalf of the Commonwealth.**

In considering a challenge to the sufficiency of the evidence, the Court must decide whether the evidence adduced at trial, viewed in the light most favorable to the Commonwealth, together with all reasonable inferences therefrom, could enable the fact-finder to find every

3

element of the crimes charged beyond a reasonable doubt.[1] In making this assessment, a reviewing court may not weigh the evidence and substitute its own judgment for that of the fact-finder, who is free to believe all, part, or none of the evidence.[2] "[A] mere conflict in the testimony of the witnesses does not render the evidence insufficient."[3] The Commonwealth may satisfy its burden of proof entirely by circumstantial evidence, and "if the record contains support for the verdict, it may not be disturbed."[4] The facts and circumstances need not preclude every possibility of innocence. The fact finder may resolve any doubts concerning the defendant's guilt, unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact may be drawn from the combined circumstances.[5]

In this case, the Commonwealth presented the testimony of the complainant, her child, a Philadelphia police officer, and a Philadelphia police detective. All of the witnesses presented largely the same facts. Although Officer Coleman's testimony was slightly different from the others, it was not enough to convince this court of Appellant's innocence. Furthermore, the testimony of the two defense witnesses was deemed not to be credible by this court. At the time of this court's ruling, it stated that the alibi witnesses were not believable due to their demeanor and the absolute certainty with which they testified regarding the date in question. This was despite the fact that they could not even remember the date of their mother's birthday party, which they had hired Appellant to videotape.[6] Finally, the complainant, Ms. Cunningham, was one of the most credible witnesses this court has ever seen.[7] Her testimony was completely

---

[1] Commonwealth v. Little, 879 A.2d 293, 297 (Pa. Super. 2005), *appeal denied*, 890 A.2d 1057 (Pa. 2005).
[2] Commonwealth v. Adams, 882 A.2d 496, 498-99 (Pa. Super. 2005).
[3] Commonwealth v. Montini, 712 A.2d 761, 767-68 (Pa. Super. 1998) *quoting* Commonwealth v. Moore, 648 A.2d 331, 333 (Pa. Super. 1994), *appeal denied*, 655 A.2d 512 (Pa. 1995)).
[4] Commonwealth v. Adams, 882 A.2d at 499 (quoting Commonwealth v. Burns, 765 A.2d 1144, 1148 (Pa. Super. 2000), *appeal denied*, 782 A.2d 542 (Pa. 2001)).
[5] Commonwealth v. Cassidy, 668 A.2d 1143, 1144 (Pa. Super. 1995.)
[6] Notes of Testimony from 2/1/13 at 69.
[7] Notes of Testimony from 2/1/13 at 68.

4

believable and reliable. Also, her testimony was nearly identical to the statement she gave to Detective King on the night in question, further bolstering her credibility. The evidence proved, beyond a reasonable doubt, that Appellant forced his way into Ms. Cunningham's home and brutally attacked her by choking her, punching her, and holding a knife against her neck. This court, sitting as fact finder during the waiver trial, believe the complainant's version of events instead of the alibi witnesses. There is certainly enough evidence to uphold this court's finding and there is nothing in the record that should disturb this court's ruling.

- **The Lower Court erred in failing to grant the Defendant's post-sentence motion.**

Appellant filed two post sentence motions. The first, filed on May 3, 2013, was denied by operation of law on September 3, 2013. In that motion, Appellant, by and through his attorney, claimed that this court's verdict was against the weight of the evidence presented at trial. This court incorporates the opinion above in affirming the denial of that motion. The evidence presented at trial proved, beyond a reasonable doubt, that Appellant viciously attacked the complainant in her home, choked her to the point she could no longer breath, and threatened to kill her. This court was correct in finding him guilty of burglary, aggravated assault, REAP, PIC, and terroristic threats.

Appellant's second post trail motion, filed on July 20, 2014, argued that he was denied effective assistance of counsel due to his attorney's failure to file a direct appeal to the Superior Court following his trial. As Appellant's appellate rights have been reinstated, that motion is no longer of any moment.

For the reasons outlined previously, denial of Appellant's post sentence motion of May 3, 2013 was proper and he is not entitled to any relief as a result of this claim.

5

## V. CONCLUSION

For the above stated reasons the judgment of this court should be upheld and Appellant's claims should be denied.

Coleman, R.